No. 3902

Second Circuit

EVANS v. BIG CHAIN STORES, INC., and TRAVELERS' INS. CO. (RHODA EVANS, Intervener)

(February 26, 1931.  Opinion and Decree.)
(April 19, 1931.  Rehearing Refused.)
(May 25, 1931.  Writs of Certiorari and Review Refused by Supreme Court.)

Foster, Hall, Barret & Smith, of Shreveport, attorneys for plaintiff, appellant.

Thatcher, Browne, Porteous & Myers, of Shreveport, attorneys for defendants, appellees.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, attorneys for intervener, appellee.

DREW, J. This is a suit under the Workmen's Compensation Laws. The contest is between the widow of deceased employee and his mother. The plaintiff, who is the widow, sued for compensation. The mother of the employee, Rhoda Evans, intervened, setting up an adverse claim. Roosevelt Evans, husband of the plaintiff and son of the intervener, was an employee of the Big Chain Stores, Incorporated, and it is agreed by all parties to the suit that Roosevelt Evans was injured on May 11, 1929, while working in the scope and course of his employment, and that he died as a result of his injuries. In the agreed statement of facts dictated into the record, it is stated that the business of the employer and the work of the employee placed deceased within the protection of the Workmen's Compensation Act (Act No. 20 of 1914 as amended). It is also agreed that the employee was earning the sum of $17 per week.

Plaintiff sued for the sum of $1,656, payable at the rate of $5.52 per week for a period of three hundred weeks from the 21st day of May, 1929, with interest on said weekly payments. Plaintiff alleged that, at the time of the injury and death of her husband, he was providing a home for her, was frequently with the plaintiff at said home, and that she and her husband were living on affectionate terms as man and wife, and, therefore, that the plaintiff was living with her husband at the time of his injury and death within the meaning of the Workmen's Compensation Laws of the State of Louisiana. In the alternative, plaintiff alleged that, if the court should hold that she was not living with her husband within the meaning of the compensation laws of this state; that she was actually and wholly dependent upon him for support at the time of his injury and death; that he provided a home for her, paid all her living expenses, particularly her room rent, meals, washing, and other necessities; that she was ill, and had no other means of support at the time of the injury and death of her husband except the earnings of her husband.

The intervener, Rhoda Evans, denied the allegations of plaintiff's petition on the question of dependency, and denied that plaintiff was living with her husband as man and wife, as contemplated by the compensation laws of Louisiana, and alleged that plaintiff and deceased had not lived together as man and wife since 1923; further alleging that the deceased lived with intervener, his mother, and was her main support, and that she was entirely dependent upon his earnings for her maintenance and support.

The defendant made no defense in the case, and admits liability to either plaintiff or intervener. They deposited in court the amount of compensation due at the time of the trial, together with court costs up to that time, and, in fact, confessed judgment, in the amount prayed for, expressing a willingness to make payment to either party to whom the court says compensation is due.

Plaintiff filed as to intervener an exception of prematurity and of no cause and right of action, based on the ground that intervener does not allege, demand and refusal of payment of compensation. The exceptions were overruled by the lower court, and properly so under the admission of defendant. If the exception had been sustained, it would not in any way affect the decision as to plaintiff. Plaintiff relies on the decision of this court in the case of Harris v. Louisiana Oil Refining Corporation, 13 La. App. 416, 127 So. 40, as being decisive of this case, and her contentions are correct, if we find the facts to be as alleged and claimed by plaintiff. However, if we find the facts to be as contended by intervener, the decision in the Harris case will not be applicable. Therefore, in the last analysis, the decision in this case rests solely on a question of fact.

The lower court found for intervener on a question of fact, and we cannot say the decision of the lower court is manifestly erroneous. To the contrary, a careful analysis of the testimony in the record brings us to the conclusion that the facts are with the intervener. The lower court saw and heard the witnesses testify, and therefore could better judge their credibility than we can. We can only look to the reasonableness of the testimony as disclosed in the record, and, when this test is applied, it is certain that the testimony of intervener and her witnesses is more reasonable than that of plaintiff and her witnesses. There is much conflicting testimony in the case; however, the following facts are undisputed:

(1) That plaintiff and deceased were married on May 15, 1923, and lived together in the home of intervener until December 29, 1923, when plaintiff left deceased's home and has never returned there to live with him, although he continued to live with his mother, intervener, until his death on May 21, 1929.

(2) That the employer, defendant herein, or its agents, did not know that deceased was married, and that deceased left instructions with his employer to deliver his salary to his mother whenever she called for it, and that his salary was paid to her on different occasions by his employer during the four years preceding his death.

(3) That his salary was $17 per week, and that he received his pay every Tuesday evening.

(4) That defendant paid compensation to intervener up to the time of the filing of suit by plaintiff or until they learned that suit was to be filed.

(5) That intervener did not know of the marriage of plaintiff and deceased until after the ceremony had been performed and deceased had brought her to intervener's home to live.

(6) That the grandparents of plaintiff, with whom she was living at the time of her marriage forced the deceased to marry plaintiff.

Plaintiff contends that, after she left the home of intervener and deceased, she never

again returned there for any purpose. She is, however, successfully contradicted in this statement, and it is proven that she went there at least once, if not several times, and that she attempted to get deceased to take her back and he refused. She contends that during the more than five years after she left intervener's home that deceased maintained her at a rooming house, paid her rent, board, washing, bought her clothes, shoes, and fruit, gave her spending money and paid for several trips that she took during the time; that she did no work to earn a living for herself; that deceased paid these bills of hers every Saturday night after he had drawn his weekly pay; that he visited her frequently, and spent two to four nights a week with her. She is corroborated partially by the woman with whom she roomed, her son, and a girl who occasionally worked in the restaurant for her landlady.

If deceased had furnished to plaintiff all she claims he did, then it is certain that he would have had left very little out of his wages to maintain himself with, pay room rent and board, and buy his wearing apparel. But plaintiff is successfully contradicted by the intervener and her son, also the president and the bookkeeper of the concern by whom deceased was employed, as well as by the woman with whom plaintiff roomed after the death of her husband. Deceased was paid each week on Tuesday evening, sometimes his mother drawing the salary, most of the time he collecting it himself, and it is unusually strange that he should wait until late Saturday night to pay his wife's bills. It is also unusual that he should have been living with plaintiff as his wife and she not know when his pay day was. She undoubtedly did not know, as she testified he was paid each Saturday night.

Deceased was intervener's oldest son. He lived with her until his death. He was her principal means of support. He authorized her to draw his wages, which she sometimes did, and, when he drew his wages, he turned it over to his mother, who paid for him the bills he had made for clothes, etc., and gave to him for spending money $1.50 or $2 per week. The record shows that, after plaintiff left her husband, he, on several occasions, told others that she had left him for some one else, and that he would never take her back. He refused to take her back when she requested him to, that they had lived separate and apart for more than five years, and that plaintiff had told the woman she roomed with after her husband's death that he had not contributed to her support since she left him, and that a man by the name of Max Sims had supported her. The circumstances and the evidence in the record are corroborative of the testimony of intervener and opposed to the contentions of plaintiff that deceased supported her and lived with her as man and wife.

We are convinced that the deceased did nothing toward the support of plaintiff after she left him, and that he did not maintain relations of man and wife with her after that separation; that he was the main support of his mother; the principal part of his wages being used for that purpose. The lower court so found, and the judgment is correct.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.